UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------X
                        :

ROBERT WATKINS,            :

                        :       Index No. _____

         Plaintiff,        :

                        :

      v.                  :

                        :       **COMPLAINT**

BAI BRANDS, LLC,         :

BEN WEISS,              :

DR PEPPER SNAPPLE GROUP, INC.,  :

n/k/a KEURIG DR. PEPPER, INC.,   :

                        :

         Defendants.     :

                        :

-------------------------------------------------------:
                        X

## COMPLAINT IN CIVIL ACTION

Plaintiff, Robert Watkins ("Watkins"), by way of complaint against defendants, Bai

Brands LLC ("Bai"), Ben Weiss ("Weiss"), and Dr. Pepper Snapple Group, Inc. ("DPSG") now

known as Keurig Dr. Pepper, Inc. ("Dr. Pepper") (collectively "Defendants") says:

## NATURE OF THE ACTION

1.    This action arises  from Defendants' concealment of critical documents during the

course of *Watkins v. Bai Brands, LLC et al.*, Case No. 3:17-cv-2715-BRM-DEA (hereinafter

"Watkins Matter").  The documents, which the defendants  knew existed, were not produce and

were intentionally hidden from the plaintiff. The documents  would have corroborated the

plaintiff's claims and would have been dispositive of the key issue in the Watkins Matter *i.e.* -

his ownership interest in Bai.  The Defendants knew of the documents, but claimed not to have

them and were not produced although demanded during discovery.

2.     The Watkins Matter alleged that the Plaintiff had been granted an ownership interest in Bai, which was eventually  acquired by Dr. Pepper.  Weiss, the managing officer of Bai who promised Mr. Watkins the ownership interest, stated that no such agreement existed. Dr. Pepper, which acquired Bai, failed to pay monies for the shares granted to Watkins and inappropriately paid the monies rightly belonging to Watkins to Weiss and others.

3.     Had the documents been produced – or even openly acknowledged, the proofs would have documented that – Mr. Weiss, Bai and DPSG were obligated to pay Mr. Watkins $1,243,442.50

4.     The parties were ordered to mediation with Hon. Bill Mathesius on September 17, 2018. Due to the failure of the defendants to produce the critical documents, the plaintiff was placed in a position of accepting a settlement well below the obligated amount of  $1,243,442.50

5.     Plaintiff's claim in the Watkins Matter was premised upon an oral agreement he had with Bai's founder, Ben Weiss.  Specifically, he entered into an employment agreement with Bai pursuant in which, in addition to a modest salary, Weiss and Bai promised to grant him 0.50% of its equity in Bai (representing 11,625 membership units) upon the completion of one year of employment/engagement with Bai.  The promise to Watkins and the four others employed or engaged (collectively, the "PPM-5") by Bai was disclosed to investors in Bai's Private Placement Memorandum dated April 27, 2010 ("PPM").

6.     In a subsequent litigation, it was discovered that on or about September 21, 2010, Weiss sent an email to Ari Soroken, Bai's CFO, disclosing that he "promised the following people ½ of 1% equity after 12 months," Weiss then identified the five individuals: Ray [Schlaefer], Robert Vitals, Robert Watkins, Susan Nyzio and Eric Quinones. The email is hereinafter referred to as "The Email" (KDP-1707–08), was never produced to Watkins counsel.

7.      Watkins was employed by Bai for more than a year, meeting the condition precedent.  Watkins was largely responsible for establishing Bai's initial distribution network up and down the East coast.

8.      In January 2017, Bai concluded a merger with Dr. Pepper valued at $1.7 billion. Upon information and belief, under the merger agreement, owners of Bai received approximately $91 to $93 for each Bai membership unit. When Watkins inquired about his units, Bai (both Weiss and Bai's General Counsel, Gary Hacker) disavowed his ownership.  It appears that the defendants erased Watkins' ownership interest from Bai's books and records, but also concealed records and failed to disclose Watkins' ownership interest to Dr. Pepper during the merger process. Documents referencing Watkins and the other PPM-5 members were subsequently found to be in the possession of Geoffrey Weber, Bai's retained counsel from 2009 to 2014.

9.      On or about April 21, 2017, Watkins commenced an action in this court alleging *inter alia* (i) declaratory judgment that he was the owner of an economic interest in Bai; (ii) breach of contract; (iii) breach of fiduciary duty; (iv) tortious interference and breach of contract/third party beneficiary.

10.      On or about May 13, 2018, Weiss certified in his initial disclosures pursuant to Rule 23(a)(1) that records relating to Bai's PPM were in the possession of Bai and Dr. Pepper.

11.      Throughout the pendency of the Watkins Matter, Jackson Lewis, counsel for Bai and Dr. Pepper, claimed that they had no responsive documents to the documents requests including any documents identifying the PPM-5.  Terri Gillespie ("Gillespie") lead this engagement for Jackson Lewis. Counsel for Bai and Dr. Pepper never produced a single responsive document concerning the identity of the PPM-5.

12.     On or about October 1, 2021, Jackson Lewis in a related matter did produce "The Email."  This non-privileged email exchange between Weiss and Soroken was in the files of Bai's former attorney Geoffrey Weber, along with over 30 documents confirming Watkins' and the other PPM-5 members interest in Bai.

13.     In or about March 9, 2022 Jackson Lewis also produced additional documents from a previously undisclosed former counsel of Bai, Eckert Seamans, that expressly confirmed that Watkins was among a pool of Bai employees who were given a 0.50% interest in Bai. See KDP-1796.  This document lists all the employees whom Watkins alleged in his complaint were given an equity interest in Bai in 2010, as disclosed in the PPM.

## PARTIES

14.     Plaintiff, Robert Watkins, is a former employee of Bai Brands LLC, residing and domiciled in North Carolina.

15.     Defendant, Bai Brands LLC ("Bai") is a limited liability company organized and existing under the laws of the state of New Jersey with its principal place of business at 1800 East State Street, Suite 153, Hamilton, New Jersey 08609.

16.     Defendant, Ben Weiss ("Weiss") is the founder and former CEO of Bai. Upon information and belief, Weiss is a resident and domiciled in Princeton, New Jersey.

17.     Defendant Dr. Pepper SNAPPLE Group, Inc., now known as Keurig Dr. Pepper, Inc. ("Dr. Pepper") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Frisco, Texas and Burlington, Massachusetts.

## JURISDICTION AND VENUE

18.     Subject matter jurisdiction is conferred upon this court pursuant to 28 U.S.C.A. § 1332(a)(1) as Plaintiff is domiciled in North Carolina and Defendants are domiciled in New

Jersey, Massachusetts, and Texas, and the amount in controversy exceeds the amount of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

19.     Venue is appropriate in this judicial district pursuant to 28 U.S.C.A. 1391(a)(2) and that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

20.     Bai manufactures and distributes antioxidant-infused soft drinks. Initially, Bai used coffee fruit from Indonesia to create it first beverage and since then has added an array of other fruit flavors to extend its product line.

21.     Weiss was not from the soft drink world, having previously worked in banking, developing frozen chocolate drinks and the coffee industry.

22.     Initially, Weiss sold Bai out of a storage facility in New Jersey with a van and two helpers: Ray Schlaefer and Robert Vitalis. Bai sold its first case of soft drinks in August 2009.

23.     The response seemed positive, but production, distribution and sales cannot be achieved in any meaningful way through a van and two men operating out of a storage unit in Princeton New Jersey.  Weiss sought experienced beverage people to assist in launching Bai.

### *Recruitment of Watkins & Representations Made by Weiss*

24.     One of Bai's first significant hires was Plaintiff Robert Watkins from New Leaf Teas. Watkins was the National Sales Manager of New Leaf and had significant contacts in the industry, having spent over 20 years in the business.

25.     When Weiss interviewed Mr. Watkins, Weiss told Watkins that he planned on selling Bai within five years. Presumably to bolster this claim, Weiss told Mr. Watkins that Starbucks had offered to purchase Bai, but the offer was inadequate.

26.     Watkins saw potential in the Bai's product, and joined Bai because Weiss promised Watkins would receive an equity stake in Bai.  While the salary of $70,000 per year was a pay cut, the upside from the equity interest made the position attractive.  Watkins was offered an equity interest in Bai of 0.50% in Bai. Plaintiff accepted the position as Vice President of Direct Store Delivery ("DSD").

27.     On or about March 1, 2010, Watkins began work for Bai as the Vice President of DSD.

28.     At this time, Bai did not have any distributors handling its products. Bai simply had a van and two men distributing the product.

### Watkins Contract with Bai

29.     After starting work at Bai, Watkins subsequently entered into a written employment contract with Bai on or about April 26, 2010 (the "Employment Agreement"). This contract was executed at the Princeton Public Library in Princeton, New Jersey.

30.     When Watkins was presented with the contract, Weiss told him that this was the easiest contract he had ever prepared because all he had to do was change the title and swap Watkins' name with Walther Gaybor's, another early employee who was promised equity in Bai. The compensation package was similar to Gaybor's in two principal respects—$70,000 per year in salary and a grant of 11,625 units in Bai after one year of service to the company.

31.     Watkins signed the Employment Agreement at the Princeton Public library and handed it back to Weiss. Weiss in turn said he would return a fully executed copy to Watkins. Weiss and Bai never provided a fully executed Employment Agreement to Watkins.

32.    Under the Employment Agreement, Watkins was entitled to a grant of 11,625 units in Bai after one year of service. Said equity position was disclosed in the Private Placement Memorandum dated April 27, 2010 and prepared for circulation to potential investors.

33.    Bai employed Watkins for more than a year.  His initial equity position in Bai vested pursuant to the terms of the agreement between Watkins and Bai.

### *Private Placement Memorandum*

34.    The Private Placement Memorandum dated April 27, 2010 (the "PPM"), which Bai published to potential investors described Watkins as having "25 years of experience in sales, distribution and brand building in the bottled beverage market, Mr. Robert Watkins brings a wealth of experience to the company." It listed Mr. Watkins as part of the company's management - a key manager.  No other executives or employees were identified by name in the PPM except Watkins and Weiss.

35.    The PPM states that:

> The Company has entered into oral agreements with five (5) different individuals that they shall each have the option to receive up to a total of 0.5% of the Company, and thus together up to an aggregate of 2.5% of the Company, upon completion of one-year of engagement with the Company.  More information on these membership interest grant agreements can be provided upon request.

36.    Mr. Watkins was one of those employees. The PPM represented that there was a total of 2,325,000 outstanding ownership "units" owned by Bai equity holders.  One half of one percent of the 2,325,000 outstanding units equaled the 11,625 units originally granted to Watkins under his Employment Agreement as set forth in the PPM.

### *Watkins' Accomplishments*

37.    Mr. Watkins greatly expanded the distribution and slotting of Bai into a number of retail outlets in the Mid-Atlantic and Northeast regions.  In fact, Watkins was principally

responsible for landing Bai's first distributor, Healthy Products of Allentown, Pennsylvania, in May 2010.

38.     Mr. Watkins was a key factor in the signing of Canada Dry Delaware Valley ("CDDV") (Honickman Companies) for the mid-Atlantic region, after Soroken passed on the opportunity due to extensive changes to Honickman's long standing contract.  Watkins was able to correct the situation and CDDV became the largest distributor for Bai at the time.

39.     Watkins was able to convince Great State Beverage to distribute Bai's products. This vastly expanded Bai's reach and increased the company's value by extending their footprint into New England.

40.     Watkins was also instrumental in securing distributers for Bai's products in Connecticut, Maine, New York, Pennsylvania and Vermont.  In total, over 15 distributors signed on to distribute Bai based on Watkins' contacts and connections in the industry.

41.     In addition, Watkins was able to get Bai slotted into a number of chain stores such as Price Choppers in New York and New England, Krogers in Virginia, Turkey Hill and Redners Markets in Pennsylvania, and Nugget Markets in California.

42.     After drafting the PPM, Bai gave Watkins a copy of the PPM and Bai's Operating Report. Bai asked him to circulate it to distributors to see if he could get them to invest in Bai, which Watkins did.

43.      Mr. Watkins' efforts helped  put Bai on the trajectory for success.  Due to his efforts, Bai had a number of established distributors carrying the product throughout the mid-Atlantic and New England regions and the product was now slotted into a number of chain stores with hundreds of locations.  These efforts vastly increased Bai's value.

44.     On or about January 3, 2011, in recognition of his efforts on behalf of Bai, Watkins was awarded another 1,250 units in Bai.

45.     While Bai's sales were growing, this growth was constrained by the lack of resources at Bai.  While Weiss was able to keep Bai afloat, it never generated any profits to continue its growth trajectory in any meaningful way.  Bai was constantly seeking additional investments and in 2015, Dr. Pepper invested $15M in Bai.  This investment was an attempt by Dr. Pepper to offset faltering sales to brands like Dr. Pepper®, Crush® and Squirt®; who like Coke and Pepsi have seen their sales fall over the past quarter of a century.

46.     On or about November 21, 2016, Dr. Pepper, Superfruit Merger Sub, LLC, Bai, and Fortis Advisors, LLC entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Dr. Pepper was to acquire Bai for a purchase price of approximately *$1.7 billion*.

47.     Pursuant to the Merger Agreement, Bai was required to cause a Letter of Transmittal in "customary form" to be sent to all members of Bai.  It is customary for a Letter of Transmittal to instruct members/shareholders as to the procedures they must take to exchange their units for the applicable merger consideration.

48.     Following the announcement of the merger, Watkins contacted Weiss to inquire about his interest in Bai and receipt of the merger consideration for his  ownership interest, which he stated was limited to the original grant, ignoring the subsequent distribution.

49.     Mr. Weiss told Watkins he "should shred the certificates" he had in Bai as they were "worthless."

50.     Watkins never received a copy of the Letter of Transmittal and was never offered the opportunity to exchange his units for the merger consideration.

51.     The merger closed on or about January 30, 2017 (the "Closing").

52.     Under the terms and conditions of the Merger Agreement, at the Closing each unit of Bai's issued and outstanding membership interests  was cancelled and automatically converted into the right to receive from Dr. Pepper a per unit amount of the Merger Consideration (the "Per Unit Closing Consideration").

53.     Upon information and belief, the Per Unit Closing Consideration was calculated to be approximately $91 to $93.

54.     In addition, under the terms and conditions of the Merger Agreement, at the Closing each of Bai's restricted units outstanding were cancelled and automatically converted into a Bai unit in accordance with its terms, and such units became a right to receive from Dr. Pepper the Per Unit Closing Consideration.

55.     On or about February 2, 2017, Watkins' counsel wrote to Gary Hacker, General Counsel for Bai, inquiring if Bai had Watkins name in its books and ledger reflecting Watkins ownership interest in the profit-sharing units granted to him on January 3, 2011, and 11,625 units granted to him under his oral agreement with Weiss, on behalf of Bai and his  Employment Agreement with Bai

56.     On or about February 14, 2017, Hacker said that no contract between Bai and Watkins existed and told Watkins to return the certificates representing the additional ownership interest he acquired in Bai.

### The Watkins Matter

57.     On or about April 21, 2017, Mr. Watkins sued Bai and Weiss (among others) , sought   (i) a declaratory judgment that he was the owner of an economic interest in Bai; (ii)

damages for breach of contract; (iii) damages for breach of fiduciary duty; and (iv) damages for tortious interference and breach of contract.

58.     On or about May 13, 2018, Weiss stated in his initial disclosures pursuant to Rule 23(a)(1) that records relating to Bai's PPM were in the possession of Bai and Dr. Pepper. Weiss's initial disclosures were signed by an attorney at Kirkland & Ellis, LLP.

59.     On or about April 21, 2018, Plaintiff served its First Request for the Production of Documents ("RFP") pursuant to Rules 26 and 34 of the Fed. R. Civ. P., requesting from Defendants, *inter alia*:

> All documents evidencing, reflecting or referring to any agreements (oral or written) between Bai or Weiss, on the one hand, and Plaintiff, on the other, including without limitation any agreements relating to Plaintiff's actual or potential employment or ownership of any membership or economic interest in Bai, and including all drafts of potential written agreements.

60.     On or about May 30, 2018, Jackson Lewis on behalf of Bai and Dr. Pepper served Defendants' Objections and Responses to Plaintiff's First Request for Production of Documents. The Defendants objected, refused and failed to provide the written agreement, the PPM, documents evidencing Watkins' ownership of any membership or economic interest in Bai or any other documents to this request.

61.     Defendants concealed other documents Watkins requested during the Watkins Matter regarding Robert Vitalis. Watkins RFP expressly requested:

> All documents evidencing, referring to or otherwise concerning (a) any employment agreement between Bai and Robert Vitalis, and/or any Bai membership or economic interest owned or claimed to be owned by Vitalis, including without limitation documents evidencing communications relating thereto; (b) any inquiry or claim by Vitalis to Bai and/or Weiss respecting the value of his Bai membership or economic interest in or around the time of Bai/Dr Pepper merger; and (c) any contemplated or consummated transaction between Vitalis, on the one hand, and Weiss or Bai (or any affiliate of either), on the other hand, concerning Vitalis' membership or economic interest in Bai, or claim of such an interest, including without limitation any document executed by Vitalis in

connection with that transaction and any document evidencing any payment made to Vitalis in connection therewith.

62.     Weiss and his attorneys at Kirkland and Ellis, LLP objected to this request and failed to produce a single responsive document although they had a document entitled Settlement and Release of Claims Agreement dated February 22, 2017 signed by Robert Vitalis and Ben Weiss, in their possession during the Watkins Matter.

63.     Upon information and belief, Weiss and his counsel, Kirkland and Ellis, LLP had a copy of this release in their files during the pendency of the Watkins Matter and fraudulently concealed it during discovery.

64.     Defendants had an obligation to disclose all relevant documents responsive to Plaintiff's discovery requests. The Federal Rules of Civil Procedure required Defendants and their respective counsel to conduct a thorough, accurate and honest investigation of the responses and their document production they assembled.  Defendants intentionally withheld, altered or destroyed the evidence requested in Plaintiff's First Request for the Production of Documents which was in their possession, custody and control.

65.     Plaintiff suffered damages as a result of Defendants' fraudulent concealment of documents evidencing his employment agreement and ownership stake in Bai.

66.     On September 17, 2018, the court ordered the parties to mediation before the Hon. Bill Mathesius and on or about November 29, 2018, the matter was settled for a fraction of the real value of Mr. Watkins' claim because defendants fraudulently concealed a series of documents expressly requested during discovery in the Watkins Matter.

67.     In December 2018, Weiss hired Gillespie as general counsel position at his new venture Crook & Marker.  Gillespie concealed evidence in the Watkins Matter which were in her clients' possession, custody and control.

68.     Upon information and belief, Defendants and their respective counsel were working under a joint defense agreement/common interest agreement during the Watkins Matter. All factual information was shared among counsel, including the existence of the Email, Cap Tables and the Settlement and Release of Claims Agreement which were expressly requested during the Watkins Matter.

69.     Upon information and belief, Defendants joint defense agreement/common interest agreement contained a judgment sharing provision and/or a tolling provision whereby Dr. Pepper maintains the ability to pursue claims against Weiss.

70.     Upon information and belief, Defendants knew of Weber's representation of Bai from 2009 to 2014 prior to the disclosure of Weiss's Supplemental Interrogatory Responses dated September 18, 2018, and presumably contacted Weber and his office to ascertain what information he had on the core issues in the Watkins Matter and concealed the documents maintained by Weber.

71.     Defendants knew that Weber had responsive documents in his possession based on their investigation of the matter and apparently determined that it was in their collective best interest to disclose Weber's name at the eleventh hour (days after the Court ordered mediation), in the hopes that they could get to mediation and have Watkins accept an offer when they were concealing: (i) The Email; (ii) thirty-one (31) Cap Tables with Watkins and other members of the PPM-5 listing their ownership interest; (iii) the Award and Letter Agreement dated November 6, 2016 to Robert Vitalis and (iv) the Release and Settlement of Claims Agreement dated February 21, 2017, which were all in their possession, custody and control.

### *The Vitalis Matter*

72.     On or about May 17, 2019, counsel for Robert Vitalis wrote to Aaron H. Marks, Esq. at Kirkland & Ellis, LLP to see if we could resolve the claims of Mr. Vitalis, another member of the PPM-5 without judicial intervention.

73.     On or about May 13, 2019, Mr. Marks wrote back cautioning that Mr. Vitalis had released the claims and provided a copy of a "Settlement and Release of Claims Agreement" purportedly executed on February 22, 2017.  This document was never produced during the Watkins Matter, although expressly requested from both Weiss, Bai and DPSG.

74.     On or about October 10, 2019, Robert Vitalis commenced an action entitled *Vitalis v. Bai Brands, LLC et al.*, Docket No. MID-L 7014-19 in the Superior Court of New Jersey Law Division, Middlesex County (hereinafter "Vitalis Matter") asserting the same core claims as in the Watkins Matter.

75.     On or about November 26, 2019, Weiss filed an Order to Show Cause to get the Vitalis Matter dismissed based on a Settlement and Release of Claims Agreement and its Covenant Not to Sue Provision—the same agreement that was concealed from Plaintiff during the Watkins Matter.

76.     On December 6, 2019, Hon. Bruce J. Kaplan, J.S.C. denied the application and subsequently issued an order directing the parties to engage in limited discovery to (i) whether Vitalis maintained an ownership interest in Bai Brands, LLC and (ii) whether the conditions of ownership have been satisfied.

77.     During the course of discovery in the Vitalis Matter, Defendants claimed not to have any responsive documents in their possession.   Weiss stated that he did not have any responsive documents, but if they existed, they were in the possession of Bai and  Dr. Pepper.

78.     After a series of protracted discovery disputes wherein Dr. Pepper's defense counsel sought to improperly withhold every document concerning the ownership interests of the PPM-5 members, the Special Discovery Master, Hon. John F. Keefe, Sr. J.A.D. (Ret.) ordered Dr. Pepper to produce (i) a September 21, 2010, email that Weiss sent to Ari Soroken,  wherein Weiss admits to making the promises disclosed in the PPM and names each of the PPM-5 members ; (ii) thirty-one (31) Cap Tables evidencing Watkins and the other PPM-5 members' ownership interest in Bai;  (iii) a November 6, 2016 Award and Letter Agreement between Bai and Vitalis recognizing his ownership interest in Bai just days before the merger between Bai and DPSG; and (iv) a Cap Table of equity given to an Employee Pool consisting of five employees including Watkins and Vitalis identified as KDP-1796.  Said Cap Table also listed three other employees referenced in the complaint in the Watkins Matter: Walther Gaybor, Ray Schlaefer and Susan Nyzio.  All of these documents were expressly requested during discovery in the Watkins Matter and defendants fraudulently concealed.

79.     The email chain between Weiss and Soroken, identified as KDP-1707–08, states:

Ben,

Could you please list who was promised equity, the amount,  and over what time period.

Ari


Sent from my Verizon wireless phone.  Please pardon any typos. There is a bottle of Bai Sumatra Dragonfruit antioxidant infusion in my other hand.

-------- Original Message --------
Subject: Re: Equity Promised
From: "benweiss@drinkbai.com" <benweiss@drinkbai.com>
Date: Tue, September 21, 2010 6:03 pm
To: arisoroken@drinkbai.com

Ari,
In addition to our deal, I promised the following people 1/2 of 1% equity after 12 months.  My thought is that they will need to remain with the company to earn it.  Ray and Robert Vitalis have already been with the company 12 months.  Robert Watkins came on in March 10'.  Susan Nyzio came on in July (I believe).  Eric Quinones can earn the shares.  He reduced his rate from $85 to $45.  He will have to hit a certain number of hours.

Ray Schlaefer
Robert Vitalis
Robert Watkins
Susan Nyzio
Eric Quinones

I believe that is it.



**Antioxidant Infusion**

BAI Brands, LLC.
150 Neil Ct., Princeton, NJ 08540

Ben R. Weiss; Founder/Drinker & CEO
Tel: (609) 921-1262
Cell: (917) 478-0141
Fax: (609) 945-3159
Toll-Free: 877-425-2197
www.drinkbai.com
info@drinkbai.com

**make sure to follow our blog at www.drinkbai.com**

80.     Defendants were aware of the fact that Mr. Weber was Bai's former counsel  had

relevant documents because Weiss disclosed this fact on September 21, 2018, in Weiss's

Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories to Defendant Ben Weiss, weeks before the mediation with Watkins.

81.     It was Defendants' obligation to retrieve and assemble all relevant documents in response to Watkins' discovery demands.  Both Gillespie and Jackson Lewis were aware of Geoffrey Weber's representation of Bai. They intentionally and/or negligently failed to disclose Weiss's September 21, 2010 email to Soroken and thirty-one (31) Cap Tables created by Weber from September 27, 2010 to November 18, 2011 documenting Watkins' equity interest in Bai.

82.     In addition, Defendants fraudulently concealed other documents during the pendency of the Watkins Matter, wrongfully withholding two attempts made by Weiss, Soroken, Bai, and Hacker to get Vitalis to relinquish his economic interest in Bai in November 2016—just prior to the merger—and post-merger in February 2017.

83.     Defendants also concealed the fact that Eckert Seamans also had relevant documents in their possession.  In fact, Weiss and Bai failed to disclose that Eckert Seamans had been engaged to render professional services to Bai from its inception in 2009 to 2012. In Mr. Weiss's Supplemental Responses to Plaintiff's First Set of Interrogatories to Defendant Ben Weiss, he omitted Eckert Seamans' engagement with Bai.

84.     Yet on or about March 9, 2022 in the Vitalis Matter, Jackson Lewis disclosed a Cap Table illustrating the PPM-5's ownership interest in Bai in the exact percentages disclosed to investors in the PPM dated April 27, 2010, which were in Eckert Seamans' possession during the Watkins Matter and never produced.



| | | | | |
|---|---|---|---|---|
| Outstanding Shares: | 2,325,000.00 | 86.02% | 5.16% | 80.86% |

| EMPLOYEE POOL[*]: | | |
|---|---|---|
| Eric Quinones | 0.50% | |
| Walther Gaybor | 0.50% | |
| Ray Schlaefer | 0.50% | |
| Robert Vitalis | 0.50% | |
| Robert Watkins | 0.50% | |
| Susan Nyzio | | |
| | 2.50% | |

[*]not yet issued. To be earned by employee after 12 months of employment

KDP-1796

85.     None of these documents were produced during the pendency of the Watkins Matter, although they were transmitted on Bai's servers which were among the assets Dr. Pepper received from Bai after the merger closed on January 30, 2017.

86.     After the merger between Bai and Dr. Pepper, Weiss was permitted to remain in a leadership role at Bai.

87.     On or about June 14, 2017, Weiss was fired by Dr. Pepper.  Larry Young, the CEO of Dr. Pepper allowed Weiss to gracefully depart Bai and address Bai's staff on or about June 21, 2017 at Bai's headquarters.  At that meeting, Weiss showed a video of his journey at Bai.  In the video, Weiss is wearing a bracelet saying "Join the Bevolution."

88.     In 2020, Weiss self-published a book entitled *Basementality*. In it he states that in 2014 "we created silicone slap bracelets as a giveaway with a hidden USB thumb drive at one end and the phrase "Join the Bevolution" emblazoned across the middle.  I never told anyone that I carried a copy of our capitalization table-the ledger of ownership of all Bai shares, including our outside investors and our employees who held equity-on that USB drive." *Basementality* at 217. Weiss did not produce a single responsive document resembling cap table during the course of discovery in the Watkins Matter.

89.     Remarkably, in the Acknowledgement section of *Basementality*, Weiss thanks the "book team" for providing feedback on drafts.  Included in the "book team" was Terri Gillespie, who after closing out the mediation in the Watkins Matter left Jackson Lewis to join Weiss's new venture Crook & Marker.  Presumably, Gillespie read the book before it was published and the admission that Weiss had a USB thumb drive that contained a cap table listing all of Bai's equity holders, which was never disclosed during the course of the Watkins Matter.

90.     Upon information and belief, Dr. Pepper must have known Weber and Eckert Seamans had relevant documents because they presumably conducted due diligence prior to closing the $1.7B merger with Bai in January 2017.

91.     Plaintiff brings this action to recover damages from Defendants' fraudulent concealment of documents, which confirmed that plaintiff had an ownership interest in Bai. These and other critical documents were expressly demanded  in Plaintiff's discovery requests in the Watkins Matter and fraudulently concealed by Defendants during the discovery.

92.     These critical documents are evidence of Plaintiff's equity interest in Bai, and Defendants' knowledge of the same. The concealed documents corroborate Plaintiff's claim and are dispositive of the issue of Watkins' ownership interest in Bai.

## COUNT ONE
### (Fraudulent Concealment)

93.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

94.     During the course of the Watkins Matter, defendants had a legal obligation to disclose evidence in connection with the claims asserted in said matter.

95.     The evidence concerning Watkins' economic interest in Bai (*i.e.*, Weiss's September 21, 2010 email to Soroken confirming the existence of the promises made to the PPM-5 and their identities (KDP-1707-08); 31 Cap Tables[1]; the Settlement and Release of Claims Agreement purportedly signed on or about February 22, 2017 and the Award and Letter Agreement dated November 6, 2016 (KDP-1721-23) and the Cap Table illustrating the grant of 0.50% in Bai given to the PPM-5 as disclosed in the PPM dated April 27, 2010 were material to the Watkins Matter and were fraudulently concealed from Watkins' counsel during the course of the litigation.

96.     Plaintiff could not reasonably obtain access to the evidence from another source because it was in the exclusive possession, custody and control of Defendants.

97.     Defendants intentionally withheld, altered or destroyed the evidence with the purpose to disrupt the Watkins Matter and coerce Watkins into a settlement upon favorable terms due to their fraudulent concealment of documents Plaintiff expressly sought through discovery.

98.     Plaintiff was damaged in the underlying Watkins Matter by having to rely on an evidential record that did not contain material evidence requested during discovery that defendants fraudulently concealed.

---

[1] KDP-1709-10; KDP-1725-35; KDP-1740-45; KDP-1747-50 and KDP-1796.

## COUNT TWO
### (Fraudulent Inducement of Settlement Agreement)

99.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

100.    Defendants made material misrepresentations to Plaintiff regarding the availability and/or existence of evidence requested by Plaintiff during discovery in the Watkins Matter.

101.    Defendants knew that its representations regarding the availability and/or existence of evidence during discovery were false.

102.    Defendants intended that Plaintiff rely on these misrepresentations and enter into a settlement agreement for a significantly lower sum of money than the value of his claims.

103.    Plaintiff justifiably relied on Defendants' misrepresentations.

104.    Plaintiff was damaged by his justifiable reliance on Defendants' misrepresentations.

## COUNT THREE
### (Negligent Misrepresentation)

105.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully and at length herein.

106.    Defendants made false representations of when they failed to produce responsive documents in their possession upon request from Plaintiff.

107.    Defendants' false representations were material.

108.    Defendants had a duty to retrieve and provide relevant responsive documents following Plaintiff's First Request for Production of Documents in the Watkins matter.

109.    Defendants breached their duty to retrieve and provide these relevant documents by failing to turn over Weiss' email to Soroken, the Cap Tables, and other relevant documents in their possession evidencing Watkins' equity stake in Bai during the course of said litigation.

110.     Plaintiff was a reasonably foreseeable recipient of Defendants' false representations.

111.    Plaintiff justifiably relied on Defendants' false representations.

112.    Plaintiff was damaged by his justifiable reliance on Defendants' false representations.

113.    Plaintiff's justifiable reliance on Defendants' false representations proximately caused Plaintiff's damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request that this court entered judgment as follows:

114.    Awarding compensatory damages to plaintiff Watkins in an amount to be determined at trial in excess of $1,250,000;

115.    Awarding such other and further relief as is just and proper, including punitive damages, prejudgment interest and costs.

Dated: July 7, 2022, New Jersey

GARVEY BALLOU
1973 Route 34, Suite 204
Wall, NJ 07719
732-341-1212
jgarvey@courthouselane.com

BY:     /s/ Joseph J. Garvey
        JOSEPH J. GARVEY
        Attorneys for Plaintiff,
        Robert Watkins

LAW OFFICE OF KENNETH G. WALSH
7 Skyline Drive, Suite 350
Hawthorne, NY 10532
929-241-7307
kwalsh@kgwalshlegal.com

BY:     /s/ Kenneth G. Walsh
        KENNETH G. WALSH
        Attorneys for Plaintiff,
        Robert Watkins